HENRY LEE BIAS, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 19469

December 28, 1989                                          784 P.2d 963

*Colucci & Amador,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Deputy District Attorney, and *Bradford R. Jerbic,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

Shortly after midnight on October 22, 1987, a man using a toy gun held a 7-Eleven store patron from behind while he demanded money from the cashier, McClure. After obtaining a bag of money from McClure, the man forced the patron outside at gunpoint and ran off. When the police arrived, McClure described the gun as being black with a small green mark on the side, and said he was unsure whether it was real or a toy.

Several hours later, the police officer who made the robbery report noticed appellant and a companion in another part of town. Because appellant fit the description of the robbery suspect, the officer approached the men. When he saw appellant throw a gun into the bushes, he ordered both men in front of his car and handcuffed them. Upon retrieving the gun, the officer discovered that it was a toy gun with a green plastic projectile showing on the side.

An assisting officer went to the 7-Eleven and told McClure that they had someone they wanted him to identify. McClure rode in the squad car to where the suspects were standing handcuffed in front of another police vehicle. While McClure remained seated in the police car, an officer shined a spotlight into appellant's face and asked McClure "if the black guy was the one." Appellant was arrested after McClure made an identification from inside the vehicle.

At trial, McClure made an in-court identification of appellant. The jury found Bias guilty of robbery with use of a deadly weapon and first degree kidnapping with use of a deadly weapon. Pursuant to NRS 193.165, the trial court added consecutive ten year sentences for use of a deadly weapon to his sentences for robbery and kidnapping.

On appeal, Bias contends that because the gun used during the

robbery was a toy, his convictions for use of a deadly weapon and the corresponding enhancements must be vacated pursuant to our recent decision in McIntyre v. State, 104 Nev. 622, 764 P.2d 482 (1988). We agree.

In *McIntyre,* we held that absent proof of deadly capabilities, the use of a toy gun cannot support an enhanced sentence for the commission of the crime "with the use of a deadly weapon." *Id.* at 623, 764 P.2d at 483. Here, as in *McIntyre,* the toy gun did not warrant *per se* deadly status because it was not a firearm. Moreover, there was no evidence that appellant used or could have used the toy gun in a deadly manner. Even the trial judge noted at sentencing that she did not think the gun could be used as a blunt instrument because it was very light and "just a little plastic thing."

We decline the State's invitation to overrule our decision in *McIntyre.* Accordingly, we vacate the sentences imposed against appellant for use of a deadly weapon.

Appellant also contends that McClure's in-court identification of appellant was impermissibly tainted by the earlier identification at the 5:00 a.m. show-up. He contends that the district court's denial of his motion to suppress violated his due process rights because the show-up procedure was unnecessarily suggestive and because McClure's identification was unquestionably unreliable.

Nevada case law concerning pre-trial identification is governed by the standard of Stovall v. Denno, 388 U.S. 293 (1967). *See, e.g.,* Jones v. State, 95 Nev. 613, 617, 600 P.2d 247, 250 (1979). Considering the totality of the circumstances, the test is whether "the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that [appellant] was denied due process of law." *See Jones,* 95 Nev. at 617, 600 P.2d at 250 (quoting *Stovall,* 388 U.S. at 301-02).

The inquiry is two-fold: (1) whether the procedure is unnecessarily suggestive and (2) if so, whether, under all the circumstances, the identification is reliable despite an unnecessarily suggestive identification procedure. Banks v. State, 94 Nev. 90, 94, 575 P.2d 592, 595 (1978). We have previously recognized that "[a]n on-the-scene confrontation between eyewitness and suspect is inherently suggestive because it is apparent that law enforcement officials believe they have caught the offender." *Jones,* 95 Nev. at 617, 600 P.2d at 250. However, we also recognized in *Jones* that countervailing policy considerations may justify such a procedure. *Id.*

Appellant contends that the show-up identification was not

justified by circumstances or considerations such as those we found in *Jones* and *Banks*. We agree that the circumstances of appellant's show-up are similar to those in Gehrke v. State, 96 Nev. 581, 613 P.2d 1028 (1980), in which we held that the identification procedure was unnecessary. *Id.* at 584, 613 P.2d at 1030. Here, the show-up occurred about four hours after the robbery at approximately 5:00 a.m. McClure was brought to where the appellant was detained after being told by the police that they had someone they wanted him to identify. A spotlight was directed into appellant's face while he stood handcuffed in front of the squad car. McClure made an identification while seated in the police vehicle. We hold that this show-up procedure was unnecessarily suggestive because there were no countervailing policy considerations to justify it. *See Gehrke,* 96 Nev. at 584, 613 P.2d at 1030.

However, as we noted in *Gehrke,* despite the unnecessarily suggestive procedure, the key question is whether the identification was reliable. *Id.* at 584, 613 P.2d at 1030. Here, McClure recognized several of appellant's features. In addition, only about four hours had elapsed since the robbery. McClure testified at trial that he was almost certain appellant was the robber and was "100 per cent sure" upon hearing appellant's voice. He further testified that the appellant was wearing clothing similar to that of the robber's and identified the gun found at the show-up as the same as that used in the robbery. Based on the totality of the circumstances, we hold that the show-up identification was sufficiently reliable to overcome the unnecessarily suggestive procedure and was not conducive to irreparable misidentification.

Appellant further contends that insufficient evidence exists to support the jury's verdict of guilty of first degree kidnapping. However, a jury verdict in a criminal prosecution will not be reversed if there is any substantial evidence to sustain it. Criswell v. State, 84 Nev. 459, 465, 443 P.2d 552, 556, *cert. denied,* 400 U.S. 946 (1968). We have previously held that "[i]n reviewing the evidence supporting a jury's verdict, the question is not whether this Court is convinced of the defendant's guilt beyond a reasonable doubt, but whether the jury, acting reasonably, could have been convinced to that certitude by the evidence it had a right to consider." Wilkins v. State, 96 Nev. 367, 374, 609 P.2d 309, 313 (1980) (citations omitted). After reviewing the record, we hold that the evidence was sufficient to convince a reasonable jury beyond a reasonable doubt that the appellant in this case committed first degree kidnapping.

Finding no error with respect to appellant's second and third claims, we affirm his convictions of robbery and kidnapping but strike the deadly weapon language and vacate the enhanced sentences based thereon.